STEVEN G. KALAR
Federal Public Defender
Northern District of California
DEJAN M. GANTAR
Assistant Federal Public Defender
8th Floor - Suite 820
55 South Market Street
San Jose, CA 95113
Telephone:   (408) 291-7753
Facsimile:    (408) 291-7399
Email:        Dejan_Gantar@fd.org

Counsel for Defendant Trujillo

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No.:** CR 20–28 EJD (SVK) |
| Plaintiff, | **DEFENDANT'S EMERGENCY MOTION FOR RELEASE ON CONDITIONS** |
| v. | |
| ARMANDO TRUJILLO, | |
| Defendant. | |

**ARGUMENT**

**I.      INTRODUCTION & BACKGROUND**

Defendant Armando Trujillo, by and through counsel, files this emergency motion for immediate release from pretrial custody in light of the ongoing COVID-19 public health crisis. Specifically, Mr. Trujillo respectfully requests this Court, in light of the COVID-19 outbreak and Mr. Trujillo's physical health, revoke the detention order issued on February 25, and issue a new order releasing Mr. Trujillo under the strict conditions recommended by Pretrial Services at the February 25 detention hearing.

On January 23, 2020, the Government filed a one count indictment charging Mr. Trujillo with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), and on February 14, Mr. Trujillo initially appeared before the Court on those allegations.  On February 21 and February 25, the Court presided over a detention hearing.  On February 21, defense counsel sought Mr. Trujillo's pretrial release, based in part on the fact that Mr. Trujillo suffered from severe medical conditions— namely, congestive heart failure and diabetes—and that Santa Rita Jail (where federal pretrial inmates in the Northern District of California are detained) was ill-equipped to care for an inmate under such circumstances, and that his continued detention created serious health concerns.  The detention hearing was continued until February 25, and on that date, Pretrial Services recommended Mr. Trujillo's release on conditions.  ECF 7 at 2.  On that same date, several individuals—Mr. Trujillo's friends and family—were present and prepared to act as bond co-signers.  After hearing argument from both parties, the Court ordered Mr. Trujillo detained.  ECF 7.

The world has significantly changed since the Court's February 25 detention order.  On March 11, 2020, the World Health Organization (WHO) officially classified COVID-19 as a pandemic.  *See WHO Characterizes COVID-19 as a Pandemic*, World Health Organization (March 11, 2020), available at: https://bit.ly/2W8dwpS.  The President has declared a national public health emergency, *see Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/ (Mar. 13, 2020), and the Governor of the State of California has declared a public health emergency throughout the state,

1    *See Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of*

2    *COVID-19*, https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-

3    help-state-prepare-for-broader-spread-of-covid-19/ (Mar. 4, 2020), both in response to the spread of

4    COVID-19.  On March 16, six Bay Area counties issued "Shelter at Home" restrictions.  *See e.g.,*

5    https://www.sccgov.org/sites/phd/DiseaseInformation/novel-coronavirus/Pages/frequently-asked-

6    questions.aspx (March 17, 2020).

7         COVID-19 has spread rapidly and aggressively throughout the Bay Area, and experts opine the

8    number of those infected will continue to increase.  On March 16, The Northern District of California

9    responded to the crisis, and enacted General Order 72, which in effect greatly limits all court

10   proceedings and appearances through and until May 1.

11        Critically, the Center for Disease Control (CDC) makes clear: those most vulnerable to the

12   disease—*i.e.,* those likely to experience severe symptoms or death—are the elderly, and individuals

13   with underlying health conditions, namely, heart disease and diabetes.  *See*

14   https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html (March 17,

15   2020).  Moreover, conditions of pretrial confinement create the ideal environment for the transmission

16   of contagious diseases.  Joseph A. Bick (2007), Infection Control in Jails and Prisons, *Clinical*

17   *Infectious Diseases*, *at* https://doi.org/10.1086/521910.   According to public health experts,

18   incarcerated individuals "are at special risk of infection, given their living situations," and "may also

19   be less able to participate in proactive measures to keep themselves safe."  *Achieving A Fair And*

20   *Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal,*

21   *State, and Local Leaders from Public Health and Legal Experts in the United States*, (March 2, 2020),

22   *at* https://bit.ly/2W9V6oS.[1]  Put simply, an outbreak of the virus in a jail setting—where such an

23   outbreak is likely—can be catastrophic.  *See* https://www.newyorker.com/news/q-and-a/how-prisons-

24   and-jails-can-respond-to-the-coronavirus; *see also*

25   https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html.

26   

27   [1] Secretary of State Mike Pompeo has called for Iran to release Americans detained there because of
     the "deeply troubling" "[r]eports that COVID-19 has spread to Iranian prisons," noting that "[t]heir
28   detention amid increasingly deteriorating conditions defies basic human decency."  Jennifer Hansler
     and Kylie Atwood, *Pompeo calls for humanitarian release of wrongfully detained Americans in Iran*
     *amid coronavirus outbreak*, CNN (Mar. 10, 2020) *at*   https://cnn.it/2W4OpV7.

In response to the warnings of public health experts, detention facilities around the nation have begun emergency release measures, releasing pretrial defendants.  *See* https://www.nbcnews.com/news/us-news/los-angeles-sheriff-releasing-inmates-urging-fewer-arrests-help-combat-n1161206; *see also* https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.03.17%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (New York City Board of Corrections urges emergency release of jail inmates, especially those with underlying conditions, such as heart disease or diabetes).

At the time of this motion, at least one local detention facility has imposed a quarantine, after authorities discovered that multiple inmates were exposed to the virus.  *See* https://www.mercurynews.com/2020/03/13/coronavirus-inmates-quarantined-at-santa-clara-county-jail-after-defense-attorney-tests-positive/.  Santa Rita Jail, where Mr. Trujillo is detained, has circulated through numerous quarantines and shutdowns in recent weeks based on "flu"—*i.e.,* possible COVID-19—outbreaks.  And as defense counsel indicated at the February 21 hearing, Santa Rita Jail is notorious for its poor health care and unsanitary conditions.  *See e.g.,* https://www.mercurynews.com/2019/11/29/inmates-work-in-santa-rita-jails-kitchens-for-free-lawsuit-says/; https://www.ktvu.com/news/a-look-at-the-45-inmates-who-have-died-at-santa-rita-jail-in-the-last-five-years.

## II.   THE BAIL REFORM ACT REQUIRES MR. TRUJILLO'S PRETRIAL RELEASE UNDER THESE CIRCUMSTANCES

Under the Bail Reform Act, the Court must consider, amongst other things, the defendant's physical condition when deciding whether conditions can be fashioned to ensure the safety of the community and the defendant's future appearance.  18 U.S.C. § 3142(g)(3)(A).  Moreover, the Bail Reform Act provides for the "temporary release" of a person in pretrial custody "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason."  18 U.S.C. § 3142(i).

Mr. Trujillo squarely falls into the category of individuals that are at high-risk for suffering serious illness, including death, if they contract the virus.  As represented by defense counsel at the

1   detention hearing, Mr. Trujillo suffers from *both* heart disease *and* diabetes—the two underlying

2   conditions the CDC specifically notes create heightened risk vis-à-vis COVID-19.  And to compound

3   the grim reality for Mr. Trujillo, he is detained at Santa Rita Jail, a facility infamous for its inadequate

4   care, not only in times of public health crises, but under normal circumstances as well.  Thus, because

5   Mr. Trujillo is at such high risk, the Court should order him released immediately for "compelling

6   reason[s]" under section 3142(i).  Moreover, the Court should find that Mr. Trujillo's physical health,

7   in combination with the other arguments raised by the defense during the detention hearing, renders it

8   so that conditions can be fashioned to reasonably assure his future appearance and the safety of the

9   community.  18 U.S.C. § 3142(g)(3)(A).

10       In addition, "such release [is] necessary for preparation of [Mr. Trujillo's] defense."  18 U.S.C.

11   § 3142(i).  At the time of this motion, defense counsel has been informed that contact visits at Santa

12   Rita Jail are prohibited.  In light of public health experts' predictions regarding the inevitable rise of

13   infections throughout the community, it is unlikely this will change in the coming weeks. As such,

14   under these circumstances, defense counsel cannot effectively perform basic defense functions, such as

15   reviewing discovery or having Mr. Trujillo meet with defense experts.

16       Notwithstanding section 3142(i), the Court may consider all new evidence presented herein in

17   evaluating whether to release Mr. Trujillo on pretrial conditions, because none of that information was

18   available to him at the time of the detention hearing.  *See* 18 U.S.C. § 3142(f)(2)(B) (the Court may

19   reopen a detention hearing if it "[1] finds that information exists that was not known to the movant at

20   the time of the hearing and [2] that has a material bearing on the issue whether there are conditions of

21   release that will reasonably assure the appearance of such person as required and the safety of any

22   other person and the community.")  The information presented herein—*i.e.*, the rapid development of

23   the COVID-19 crisis—constitutes new information under section 3142(f)(2)(B).  So too, as noted

24   above, Santa Clara County (where Mr. Trujillo resides) has recently imposed "shelter at home"

25   restrictions, which also constitutes "new information."  Mr. Trujillo respectfully contends that the local

26   restriction, which would greatly limit his movement (as it does with most residents), is a changed

27   circumstance mitigating concerns regarding danger to the community, and renders it so that the Court

28

1   may fashion conditions that would reasonably assure the safety of the community and his future

2   appearance.

3   **CONCLUSION**

4           For the foregoing reasons, Mr. Trujillo respectfully requests the Court revoke the February 25

5   detention order, and issue a new order permitting immediate pretrial release on conditions.

6

7    Dated:      March 18, 2020                          Respectfully submitted,

8                                                        STEVEN G. KALAR
                                                         Federal Public Defender
9                                                        Northern District of California

10                                                       */s/ Dejan M. Gantar*

11                                                       DEJAN M. GANTAR
                                                         Assistant Federal Public Defender
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28