1  DAVID L. ANDERSON (CABN 149604)
   United States Attorney
2
   HALLIE HOFFMAN (CABN 210020)
3  Chief, Criminal Division

4  MARISSA HARRIS (NYBN 4763025)
   Assistant United States Attorney
5
        150 Almaden Boulevard, Suite 900
6       San Jose, California 95113
        Telephone: (408) 535-5061
7       FAX: (408) 535-5066
        marissa.harris@usdoj.gov
8
   Attorneys for United States of America
9
                  UNITED STATES DISTRICT COURT
10
                NORTHERN DISTRICT OF CALIFORNIA
11
                       SAN JOSE DIVISION
12

13  UNITED STATES OF AMERICA,           )   CASE NO. 20-CR-00028 EJD
                                        )
14          Plaintiff,                  )   OPPOSITION TO DEFENDANT'S EMERGENCY
                                        )   MOTION FOR RELEASE ON CONDITIONS
15      v.                              )
                                        )
16  ARMANDO TRUJILLO,                   )
                                        )
17          Defendant.                  )
    _____ )
18

19          On March 18, 2020, defendant, Armando Trujillo, filed an Emergency Order For Release On

20  Conditions, ECF No. 10.  This Motion is not based on any errors of fact or law underlying the Order of

21  Detention issued by the Magistrate Court, but instead on the speculative prospect of a COVID-19

22  outbreak at the facility where Trujillo is being detained pending trial.  Defendant's speculation is both

23  unsubstantiated and unwarranted.  There are no known cases of COVID-19 at the facility and no

24  evidence that the facility's staff is unprepared to address such cases if they should arise.  Moreover,

25  given the widespread community transmission of COVID-19 throughout the world, there is no evidence

26  that Trujillo would have a lesser risk of contracting the virus if he were released from pretrial custody—

27  in fact his risk of infection might very well increase.  Additionally, Trujillo identifies no deficiencies in

28  any medical care that he has personally received, or any denials of necessary medical care that he has

1  personally requested.  The defendant's Motion is therefore premised entirely on generalized speculation,

2  fear, and panic, as opposed to specific and articulable problems personally faced by this defendant.  The

3  Motion fails to articulate any new circumstances unknown to the Court when the detention order was

4  issued and should be denied.

5  **I.      FACTUAL AND PROCEDURAL BACKGROUND**

6          Trujillo is charged by indictment with a violation of 18 U.S.C. § 922(g)(1) – Felon in Possession

7  of a Firearm and Ammunition.  Specifically, Trujillo knowingly possessed a Hi-Point Model CF380

8  semi-automatic handgun loaded with seven rounds of ammunition despite numerous felony convictions

9  spanning a 25-year criminal history, which includes several crimes of violence.

10         In a February 24, 2020 bail study, Pretrial Services found that Trujillo posed a risk of

11  nonappearance and a risk of danger to the community.  Pretrial indicated that these risks could be

12  reasonably mitigated by a combination of release conditions including an unsecured bond by proffered

13  surety Ms. Christina Herrera, location monitoring, and home detention.  *See* ECF No. 7 at 2.

14         A public detention hearing was held on February 25, 2020.  Both parties were allowed an

15  opportunity to call witnesses and to present evidence.  By that time, the COVID-19 virus was making

16  local and global headlines as a serious public health emergency and Bay Area cities and counties had

17  already been accelerating emergency planning measures to ensure a rapid response to any potential

18  outbreak.  For example, on February 25, 2020, San Francisco Mayor London Breed declared a citywide

19  state of emergency, even though no confirmed cases of COVID-19 had been reported in San Francisco.

20  *See, e.g.*, Dominic Fracassa, *SF Mayor London Breed declares state of emergency over coronavirus*,

21  SAN FRANCISCO CHRONICLE, February 25, 2020, *available at*

22  https://www.sfchronicle.com/bayarea/article/SF-mayor-London-Breed-declares-state-of-emergency-

23  15083811.php.  Santa Clara County had already declared a local emergency weeks prior on February 10,

24  2020.  *See, e.g.*, Thy Vo, *Coronavirus: Public risk still low, but Santa Clara County declares local*

25  *emergency to prepare*, THE MERCURY NEWS, February 10, 2020, *available at*

26  https://www.mercurynews.com/2020/02/10/coronavirus-public-risk-still-low-but-santa-clara-county-

27  declares-local-emergency-to-prepare/.

28  *///*

On February 26, 2020, Magistrate Judge Susan van Keulen issued an Order detaining Trujillo, finding that he was both a risk of flight and a danger to the community and that no conditions or combination of conditions would reasonably assure Trujillo's appearance or the safety of the community.  *See* ECF No. 7 at 1.  Specifically, Magistrate Judge van Keulen cited several aspects of Trujillo's past and present behavior as factors weighing in favor of detention including the weight of the evidence, Trujillo's admission to purchasing the gun and the ammunition despite his numerous past felony convictions, the fact that the gun was loaded at the time of Trujillo's arrest, evidence of Trujillo's substance abuse, Trujillo's extensive criminal history over the past 25 years, including felony convictions as recently as 2011, 2013 and 2016 and crimes of violence as recently as 2008 and 2011, Trujillo's status of being on probation at the time of his arrest, Trujillo's history of violations of terms of release, with violations as recent as 2011 and 2015, and Trujillo's outstanding warrant for failure to appear in 2019.  *Id*. at 2-3.  Magistrate Judge van Keulen also considered Trujillo's proffered surety and did not find her to be a viable surety in light of her criminal history, including a crime of violence as recent as 2011.  *Id*. at 3.

The defendant did not appeal the Order of Detention.

## II.   ARGUMENT

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A finding that a defendant is a danger to the community must be supported by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).  A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Motamedi*, 767 F.2d at 1406.

There are several relevant factors informing the Court's determination of the appropriateness of pretrial detention or release including (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history;

1   and (4) the nature and seriousness of the danger to any person or to the community that would be posed

2   by the defendant's release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th

3   Cir. 1986); *Motamedi*, 767 F.2d at 1407.

4          Pursuant to 18 U.S.C. § 3142(f), a detention hearing may be reopened "if the judicial officer

5   finds that information exists that was not known to the movant at the time of the hearing and that has a

6   material bearing on the issue whether there are conditions of release that will reasonably assure the

7   appearance of such person as required and the safety of any other person and the community." 18 U.S.C.

8   § 3142(f).  Trujillo's motion, which focuses primarily on the *possibility* of a COVID-19 outbreak at the

9   facility where he is detained, does not present additional information unknown to the Court at the time

10  of his previous detention hearing three weeks ago.  Nor does Trujillo present any additional facts

11  addressing the Court's prior findings on his dangerousness and risk of flight.  The § 3142(g) factors

12  militate strongly for Trujillo's continued detention.

13         A.      <u>**There Are No Changed Circumstances Justifying Immediate Release**</u>

14         Trujillo claims that he has an increased risk of developing illness from the COVID-19 virus due

15  to his congestive heart failure and diabetes.  *See* ECF No. 10 at 2.  These medical conditions, as well as

16  the prevalence of the COVID-19 virus in the Bay Area, were well known to the Court during Trujillo's

17  prior detention hearing on February 25, 2020.  In fact, Trujillo's counsel readily admits that he

18  previously argued for release on the basis of Trujillo's preexisting medical conditions.  *See id*.  The

19  Magistrate Court nonetheless ordered Trujillo detained.

20         The potential for the spread of infectious disease is an ever present reality facing all jails,

21  prisons, detention centers, schools, and any other places where large groups of people are likely to

22  gather.  Santa Rita Jail, like every other jail and prison, has protocols in place to combat the spread of

23  viruses like Influenza and COVID-19.  The U.S. Attorney's Office understands from Santa Rita staff

24  that the specific precautionary measures taken by Santa Rita Jail in response to COVID-19 have already

25  been shared with the Court.  Yesterday, the U.S. Attorney's Office received an 80-page manual detailing

26  Santa Rita Jail's Master Outbreak Control Plan, which contains affirmative screening and quarantine

27  policies and procedures, organizational responsibility charts, emergency staffing plans, emergency

28  feeding plans, and other emergency protocols to address outbreaks of infectious diseases at the jail.  Half

of this 80-page manual is specifically dedicated to management of a potential COVID-19 outbreak and the jail's process for identifying suspected COVID-19 cases and securing adequate treatment and care for sick inmates.  This includes:

- Interim Infection Prevention and Control Recommendations for Patients with Confirmed Coronavirus Disease 2019 (COVID-19) or Persons Under Investigation for COVID-19 in Healthcare Settings issued by the CDC;

- Clinical flowcharts to assist in identifying and assessing a person's exposure to COVID-19;

- Risk stratification strategies for persons with COVID-19 contacts;

- Rapid triage and housing guidance for confirmed COVID-19 cases (which specifically takes into account preexisting medical conditions that increase risk factors);

- Policies for management of jail inmates or staff potentially exposed to COVID-19;

- COVID-19 recommendations from the California Dental Association; and

- COVID-19 testing instructions.

There are no reported cases of COVID-19 infection at Santa Rita Jail, which screens all new arrestees prior to intake and makes regular checks of the prisoner population for symptoms of infection. The jail has also placed reasonable limitations on contact visits with persons outside the jail as a precautionary measure in accordance with guidance from federal, state, and local authorities.  As such, the risk that Trujillo himself will be infected simply as a result of his detention is likely low and manageable.

Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted.  *See, e.g.*, *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008).  In this case, Trujillo's speculative concerns do not overcome the other factors militating in favor of his continued pretrial detention.  Even if the Court could weigh this speculative risk, Trujillo's motion fails to take into account substantial precautionary measures that Santa Rita has already implemented to mitigate the risk of transmission of COVID-19 in the jail.

///

Moreover, unless Trujillo plans to permanently reside in a sterile negative air pressure chamber upon release, he along with every other resident of the Bay Area will very likely be exposed to COVID-19 through community transmission over the coming months. This virus is now a global pandemic with no treatment or vaccine. It is entirely possible that Trujillo faces a lower risk of exposure by remaining in custody, where outside access to the facility is strictly controlled.

Finally, Trujillo himself is not currently infected with COVID-19. He makes no claim that he was denied necessary medical treatment or care for exposure to COVID-19 or for any other medical condition. He has identified no deficiencies in his treatment or care at Santa Rita that could be remedied by better treatment options available to him in the community. His concerns are totally based in speculation and generalized fear—not specific concerns about the quality of his personal care. This hysterical speculation does not constitute changed circumstances warranting immediate release from custody.

**B.    Trujillo's Release Is Not Necessary To The Preparation Of His Defense**

Trujillo argues that his release is necessary for preparation of his defense because contact visits have been suspended at Santa Rita Jail and he cannot meet in person with his counsel or potential defense experts. ECF No. 10 at 5. This is a rapidly evolving situation that changes daily. The government's most recent information is that, as of yesterday at 4:00 p.m., Santa Rita Jail is allowing contact visits with persons that have been prescreened for high body temperatures.

Despite noting the shelter-in-place orders currently in effect for all Bay Area counties, Trujillo suggests that he would be able to attend these in-person defense meetings if he were released. *See id*. at 5-6. Setting aside whether such in-person meetings would be feasible or prudent at this juncture, Trujillo's release is not necessary to allow him to prepare his case because it appears that he is now able to meet with his attorneys and any other necessary defense investigators or experts and speak with them over the phone. *Cf. United States v. Chandler*, 316 Fed. App'x. 676, 677 (9th. Cir. 2009) (affirming denial of continuance of trial because "extensive face-to-face contact between [defendant] and defense counsel was not necessary to prepare for trial and counsel could have consulted with [defendant] by other means, including by telephone"). Furthermore, this is not a new or unique circumstance—all criminal defendants in custody face some limitations on their meetings with counsel, if only because

business and visiting hours have to end at some point.  The government is willing to work with the defense to develop appropriate remedies that work around these limitations, for example a tablet for the defendant to review case materials and discovery at his leisure.

### C.    The 3142(g) Factors Continue To Weigh In Favor Of Detention

Since Trujillo has failed to specify any new facts or significantly changed circumstances, the Court's prior analysis of the § 3142(g) factors remains valid and intact.  These factors collectively weigh in favor of Trujillo's detention.

First, Trujillo is charged with a serious felony and the evidence against him is strong. *See* 18 U.S.C. §§ 3142(g)(1) and (2).  San Jose Police Department officers pulled Trujillo over for having an expired registration.  A records check revealed active felony and misdemeanor warrants.  Trujillo admitted that he had a gun in the vehicle, which turned out to be a loaded semi-automatic handgun within arm's reach.  He later admitted to purchasing the gun and ammunition, which were stolen according to a serial number trace.  The officers also found a methamphetamine pipe (full of methamphetamine for smoking), a bag containing white crystal residue, and over $1,600 in cash on Trujillo's person.

Second, Trujillo has an extensive criminal history spanning over 25 years, which includes crimes of violence, drug trafficking, vehicle theft, and fraud.  *See id*. at § 3142(g)(3).  He has 18 felony convictions and five convictions for domestic violence offenses.  He appears to be a methamphetamine abuser and may have been selling methamphetamine prior to his arrest.  He also has numerous prior violations of probation and release conditions.  He was on probation when he committed the instant offense.  He was arrested on active felony and misdemeanor warrants.  He had an outstanding warrant for a recent failure to appear in 2019.

Third, Trujillo has not proposed any new sureties, properties, or bond conditions that mitigate his risk of nonappearance.  He remains as dangerous as ever with a long history of violent offenses, drug trafficking, theft, fraud, and substance abuse.  *See id*. at § 3142(g)(4).  The government notes that neither his congestive heart failure nor his diabetes dissuaded him from smoking methamphetamine, illegally purchasing semiautomatic firearms, or driving through a residential neighborhood with a loaded gun— while on probation.  Additionally, the shelter-in-place and travel restriction orders do not significantly

1   mitigate Trujillo's risk of flight or the danger he presents to the community.  Why should the Court

2   believe that Trujillo would suddenly abide by civil health directives when he has repeatedly shown

3   throughout his 25 years of felonious conduct that he is entirely unfazed by the threat of criminal

4   sanctions, including significant prison sentences previously imposed on him?

5        On February 26, 2020, the Court rightly found that Trujillo, based on his demonstrated past

6   behavior, is not amenable to community supervision. The defense presents no additional facts that

7   meaningfully shift the balance of the § 3142(g) factors in Trujillo's favor.  There are no conditions or

8   combination of conditions that reasonably mitigate his risk of flight or dangerousness to the community

9   and he should remain in detention pending trial.

10  **III.   CONCLUSION**

11       The fact that a new virus exists outside of Santa Rita's walls is not grounds to release Trujillo or

12  any of the other inmates at Santa Rita Jail.  Trujillo asks this Court to ignore facts and logic and

13  succumb to his panic and speculation about how the COVID-19 virus *might* affect him, as opposed to

14  how it has *actually* affected him.  In times of crisis, the community looks to the government and the

15  courts for careful and measured responses based on facts, not on fear.  Trujillo's panic and speculation

16  does not overwhelm the careful balance of factors prescribed by Congress and thoughtfully considered

17  by the Magistrate Court in its prior ruling ordering Trujillo's detention.  His Motion for emergency

18  release should be denied.

19

20                                                      DAVID L. ANDERSON
                                                        United States Attorney
21

22  DATED: March 19, 2020                    _____/s/_____
                                                        MARISSA HARRIS
23                                                      JIMMY DOAN
                                                        Assistant United States Attorneys
24

25

26

27

28